HARRIS, Judge.
Appellant was indicted for murder in the second degree. At arraignment with counsel present appellant pleaded not guilty. The jury returned a verdict finding appellant guilty of manslaughter in the first degree and fixed his punishment at ten years in the penitentiary and he was sentenced in accordance with the verdict of the jury. After sentence was imposed, appellant gave notice of appeal and his bond was set at $10,000.00. He was furnished a free transcript and trial counsel represents him on appeal.
The prosecution and defense counsel stipulated that if a Dr. Montgomery was present, he would testify that the deceased, Percy Longmire, received a bullet wound to the side of his neck which exited in the back of his neck and that he died from the loss of blood caused by the gunshot wound.
The evidence for the State tended to show that on the night of April 4, 1975, around 9:30 o’clock, the deceased and five or six other boys were standing on Twelfth Street right off Lincoln Boulevard in the city and county of Mobile, Alabama, *810 when appellant drove his car off the paved portion of Lincoln Boulevard and was going at such a rate of speed that his car went in a ditch near where the boys were standing. That the deceased told appellant to “slow it down” or “to cool it.” That appellant backed his car out of the ditch and jumped out of the car and walked over to the deceased with a pistol in his hand saying, “Don’t you know I’m old enough to be your Daddy” and hit the deceased across the neck and the pistol fired at the same time. According to the testimony of the boys the deceased did not say anything else to the appellant before he was shot. He did not curse or threaten appellant or make any move in his direction before the shot was fired. That after the shot was fired, appellant got back in his car and left at a high rate of speed.
Some of the boys present varied in their testimony as to the events leading up to the fatal shooting but in no material respects. All of them testified to substantially the same thing. That the deceased did nothing whatsoever to appellant to provoke an argument or curse or threaten him in any manner. Some of the boys said that appellant took a step toward the deceased and it looked like appellant hit and shot him at the same time. One State witness said it seemed like appellant was trying to hit the deceased with the pistol but shot him instead. It is undisputed that the deceased had no weapon of any kind at the time he was shot and killed.
Appellant offered evidence as to his good character and general good reputation in the community.
Appellant testified thát as he approached the deceased he put his hand in his pocket and that he did not know what he was going to do and that he hit the deceased with the pistol and the gun went off. He said the pistol did not belong to him but he had taken it in pawn about a week before. He claimed he was on his way to return the pistol and get his money back when he ran in the ditch and heard the deceased make some statement to him about the way he was driving.
Appellant further testified that at the time he got into his car he thought that he had just hit the man and did not know he had shot him. He stated that he had no intention of harming anybody and did not intend to hurt the deceased. He said he did not intend to shoot the deceased.
He further testified that he drove to Mississippi and he threw the pistol out of the window of his car as he was driving because he was afraid. After getting to Mississippi he called a member of his family and found out the deceased was shot and was dead. He came back to Alabama and turned himself in. Actually he went to a bonding company and the bonding company officials carried him to the City jail.
On cross-examination he testified that he did not have the pistol in his hand when he walked up to the deceased but had it in the side pocket of his pants. That he did not intend to shoot the deceased. That he got in his car and left and he was scared when he threw the pistol out of the car. He stated he did not know where he was when he threw the pistol but he threw it away to get rid of it. He said he did not point the pistol at the deceased and that he wasn’t just exactly trying to hit him in the head. That when he left the scene, he looked back and saw the deceased staggering but did not know he was shot. He further stated that he did not know who was hollering at him when he drove around the corner and went into the ditch. That when he got out of his car, he asked, “Who was that hollering at me like that?” Someone told him it was the deceased. He said no one made him get out of his car, no one was blocking him, and he could have left the scene without hinderance.
The record reflects that the deceased met his death over a matter of no material consequence. No doubt the jury felt the same way as they deliberated only 40 minutes before returning the verdict.
*811 There was no motion for a new trial; there was no request for the affirmative charge, and no exceptions were reserved to the oral charge of the Court. After the defense rested, counsel moved to exclude the State’s evidence for failure to make out a prima facie case. The motion was denied and rightly so. Young v. State, 283 Ala. 676, 220 So.2d 843.
Under the facts and circumstances of this case it was for the jury to determine whether the shooting was accidental or whether it was intentional. McMillan v. State, 44 Ala.App. 216, 205 So.2d 603; Powell v. State, 219 Ala. 557, 123 So. 34; Macon v. State, 36 Ala.App. 651, 63 So.2d 32.
We have carefully considered the entire record and find no reversible error therein. The judgment is affirmed.
AFFIRMED.
TYSON, DeCARLO and BOOKOUT, JJ., concur.